The **FOXBORO COMPANY, INC.,** Plaintiff,

v.

**SOFT SYSTEMS ENGINEERING, INC.,** Defendant.

**Civ. A. No. 95–11522–RCL.**

United States District Court, D. Massachusetts.

Aug. 8, 1995.

Bruce R. Parker, Steven W. Phillips, Foley, Hoag & Eliot, Boston, MA, for plaintiff.

Mark G. Matuschak, David K. Wanger, Hale & Dorr, Boston, MA, for defendant.

## MEMORANDUM AND ORDER

LINDSAY, District Judge.

The plaintiff, The Foxboro Company, Inc. ("Foxboro"), has moved that this court issue a preliminary injunction restraining the defendant, Soft Systems Engineering, Inc. ("Soft Systems"), from proceeding with the sale of Soft Systems to a third party Wonderware Corporation ("Wonderware"). The court held a hearing on this motion on August 7, 1995.

For the reasons which follow, this court will grant Foxboro's motion.

1. *Facts.*

The court finds that the following facts are likely to be proved at trial.

Soft Systems is a twenty-employee computer software company located in York, Pennsylvania, with sales of approximately $2 million in 1994. Its principal product is a computer program called "DIREKTOR," which is "flexible batch" software, used in the manufacturing processes of the food, pharmaceutical and chemical industries. Foxboro, a subsidiary of the British firm, Siebe plc, is a large company with sales of $1.245 billion in its fiscal year ending April 2, 1995. Foxboro is a manufacturer of instruments and systems for industrial process automation, with customer industries including chemicals, oil and gas, pulp and paper, food, pharmaceutical, mining and metals, electric utilities, water and waste treatment and scientific laboratories.

In December of 1994, Soft Systems entered into a written agreement with Foxboro (the "Agreement"). By this Agreement, Soft Systems, among other things, granted Foxboro a non-exclusive license to use and make "DIREKTOR" for use with Foxboro's Intelligent Automation Series Control System. In addition, Foxboro purchased a 30% ownership interest in DIREKTOR for the sum of $450,000.

The Right of First Refusal, provided for in Article 15 of the Agreement, is the focus of the present motion. Article 15 provides as follows.

15.1 *Right Granted.* Soft Systems hereby grants to Foxboro a Right of First Refusal to purchase Soft Systems and/or any or all of the assets of Soft Systems, should Soft Systems either:

15.1.1 Receive a bona fide offer from a third party to purchase a controlling portion of Soft System's business or substantially all of Soft System's assets; or

15.1.2. Receive a bona fide offer to purchase a controlling stock ownership interest of Soft Systems from an individual or entity who is not a shareholder, bondholder or employee of Soft Systems.

15.2 *Exercise of Right.* Soft Systems will notify Foxboro, in writing, within 72 hours, if one of the above referenced events should occur. Foxboro shall have fourteen (14) days to make a legally binding offer substantially the same as the bona fide third party offer or in accordance with the public offering. If Foxboro does not so notify Soft Systems by the end of the fourteenth day, Foxboro shall be deemed to have decided not to exercise its right of first refusal and right of first refusal granted hereunder shall be null, void and of no legal effect as to that particular transaction.

15.3 *Termination of Right of First Refusal.* The Right of First Refusal granted pursuant to this Agreement shall terminate upon the occurrence of any one of the following events:

15.3.1 *Abandonment of DIREKTOR BY FOXBORO.* Foxboro abandons DIREKTOR as its primary batch initiative.

15.3.2 *Repurchase of Ownership Interest.* In accordance with paragraph 16.2 hereof, Soft Systems repurchases the thirty (30%) percent ownership interest of DIREKTOR sold to Foxboro pursuant to paragraph 6.3 hereof.

15.3.3 *Failure to Exercise Right of First Refusal.* Upon Foxboro's failure to exercise the right of first refusal granted pursuant to this Article 15.

In the event that another company purchases Soft Systems, Soft Systems has the right to repurchase the 30% ownership interest in DIREKTOR pursuant to Article 16.2 of the Agreement.

Wonderware is a publicly-traded company based in California, which supplies Windows-based software products for the industrial automation market. Wonderware had revenues of over $35 million in 1994.

On June 28, 1995, Wonderware sent Soft Systems a letter, denominated "Letter of Intent for Proposed Acquisition by Wonderware of Soft Systems Engineering, Inc." (the "Letter of Intent"). The Letter of Intent provides, in part:

This letter will confirm the intentions of Wonderware Corporation ... and Soft Systems Engineering, Inc. ... with respect to a proposed acquisition by Wonderware of SSE. This letter is not intended to be legally binding on any party but instead is designed to constitute the basis for preparing a definitive acquisition agreement.... The parties' legal obligations will be established by the Acquisition Agreement, when executed.

As "Consideration," the Letter of Intent recited:

All outstanding shares of capital stock of SSE will be converted into cash and that number of shares of Common Stock of Wonderware (the 'Wonderware Shares') having an aggregate value equal to approximately $7.0 million *less* the amount necessary to extinguish SSE's indebtedness to its shareholders, bondholders, taxing authorities and any intellectual property buyback options. The value of the Wonderware Shares shall be calculated based on the average closing price of the Wonderware Common Stock as reported on NASDAQ/NMS over the twenty trading days immediately preceding the date of the closing of the merger.

(Emphasis in the original.) The Letter of Intent had an "Agreed to" signature line for Wonderware and Soft Systems.

On June 28, 1995, the date of the Letter of Intent, Soft Systems wrote a letter to Foxboro notifying it that: "Pursuant to Article 15.1.2 of the Agreement, Soft Systems has received a bona fide offer to purchase a controlling stock ownership interest in Soft Systems from an individual or entity who is not a shareholder, bondholder or employee of Soft Systems." Soft Systems informed Fox-

boro that its board had unanimously approved the offer, and it attached the *Letter of Intent* to its missive to Foxboro.

Foxboro responded by letter to Soft Systems on July 7, 1995, but it does not appear that either party has submitted that letter to the court. Foxboro apparently contended that the Letter of Intent did not constitute a bona fide offer.

Soft Systems responded to Foxboro on July 7. It reiterated that it considered the Letter of Intent a bona fide offer.

Representatives of Foxboro, Soft Systems and Wonderware met on July 11, 1995. According to Jeffrey Kissling, Soft Systems' President and C.E.O., the purpose of the meeting was to assure Foxboro that the Wonderware offer was serious and to answer any questions that Foxboro had.

Foxboro filed suit in Norfolk County (Massachusetts) Superior Court on July 12. It asked for a declaration as to whether the Letter of Intent was a bona fide offer and stated: "In the absence of a determination by the Court that the Wonderware letter is not a bona fide offer, given the indefinite nature of the purported Wonderware offer and what appears to be the unrealistic price for SSE's stock quoted in that non-binding proposal, Foxboro cannot reasonably exercise its right of first refusal." Foxboro also asked for an injunction preventing Soft Systems from consummating "a transaction with Wonderware without first presenting Foxboro with Wonderware's bona fide offer and then permitting Foxboro to exercise its right of first refusal ..."

Foxboro also asked for a temporary restraining order. This request was denied by the Superior Court on July 12. Soft Systems removed the case to this court on July 19. Jurisdiction is based on the diversity of the parties.

## 2. *Law.*

■ There are four things that a plaintiff must prove before a preliminary injunction may be granted: (1) there is a likelihood that the plaintiff will succeed on the merits, (2) the plaintiff will suffer irreparable injury if

the injunction is not granted, (3) such injury outweighs any harm that the defendant would suffer if the injunction were granted, and (4) the public interest will not be adversely affected by granting the injunction. *Campbell Soup Company v. Giles*, 47 F.3d 467, 470 (1st Cir.1995); *Jackson v. Fair*, 846 F.2d 811 (1st Cir.1988).

### a. *Likelihood of Success.*

Fundamentally, this dispute reduces to whether the Letter of Intent amounts to a bona fide offer under Article 15 of the Agreement. Foxboro claims that (1) the Letter of Intent was not "legally binding" and thus by its own terms could not constitute a bona fide offer; and (2) the Letter of Intent's "consideration" provision was "incomprehensible" such that a meaningful exercise of the right of first refusal was not possible.

■ The court concludes that Foxboro will likely prevail in showing that the Letter of Intent did not constitute a "bona fide offer" under Article 15 of the Agreement.[1]

■ Under Pennsylvania law, "[a]n offer creates a power of acceptance in a specified offeree to transform the offeror's promise into a contractual obligation." *Philadelphia Newspapers v. Com.*, 57 Pa.Cmwlth 639, 426 A.2d 1289, 1290 n. 3 (1981), *citing Restatement (Second) of Contracts* § 24.[2] An offer is "a manifestation of willingness to enter into a bargain, which would justify another person in understanding that his assent to that bargain is invited and will conclude it." *Id.* See *Black's Law Dictionary*, at 1081 (6th ed. 1990) ("The offer creates a power of acceptance permitting the offeree by accepting the offer to transform the offeror's promise into a contractual obligation.")

The Letter of Intent could not have constituted an "offer" as that term is defined under Pennsylvania law. The letter stated: "This letter is not intended to be legally binding on any party but instead is designed to constitute the basis for preparing a definitive acquisition agreement."

Soft Systems contends, however, that, under Pennsylvania law, a letter of intent can constitute a bona fide offer in the right of first refusal context, even if the letter does not create a power of acceptance in the offeree. Soft Systems argues that, as long as a letter of intent was not a "sham," then it may amount to a "bona fide offer."

The cases cited by Soft Systems, however, do not support its argument. In *Steuart v. McChesney*, 498 Pa. 45, 444 A.2d 659, 663 (1982), the court noted: "By conditioning exercise of the Right of First Refusal upon occurrence of the triggering event of there being obtained a bona fide offer, protection was afforded against a sham offer, made not in good faith, precipitating exercise of the preemptive right." The court in *Steuart* explained that the term "bona fide" means "not a sham." The *Steuart* court, however, did not vary the accepted definition of "offer" as granting the offeree the power of acceptance. The words "bona fide," when appearing before the term "offer," do not change the essential nature of the latter term, but rather provide further refinement and qualification. *CBS, Inc. v. Capital Cities Communications, Inc.*, 301 Pa.Super. 557, 448 A.2d 48, 55 (1982), is to the same effect. By definition, therefore, an "offer" has to be binding as against the offeror, even in the terrain of a right of first refusal.

Soft Systems argues that, notwithstanding the definition given by the Pennsylvania courts to the term "offer," the parties here meant something different when they used the term "bona fide offer." Soft Systems asserts that the "bona fide offer" which triggers the right of first refusal need not be legally binding. Soft Systems focuses on the following sentence, which appears in Article 15.2 of the Agreement. "Foxboro shall have fourteen (14) days to make a *legally binding* offer substantially the same as the *bona fide* third party offer or in accordance with the public offering." (Emphasis added.) Soft Systems contends that, because the parties used the words "legally binding" to describe

---

1. In light of this ruling, it is unnecessary for the court to address the question of whether the consideration language of the Letter of Intent was, as Foxboro says, incomprehensible.

2. The parties agree that Pennsylvania law applies to the Agreement.

Foxboro's offer, but did not use that term with respect to the third party "bona fide offer," the latter offer was not required to be legally binding.

The court disagrees with this analysis, and concludes that Foxboro's reading of the provision is likely to prevail as the expression of the intent of the parties to the Agreement. "Legally binding offer," as used in Article 15.2, means that Soft Systems is obliged to accept the offer which Foxboro makes in response to the bona fide offer. This is the only reading of Article 15.2 which gives meaning to all words used in the sentence in question, without distorting the term "offer" into something less than its common meaning.

In short, Article 15 contains no language which converts the term "bona fide offer" into something less than a proposal which creates a binding obligation on the part of the offeror. Because the Letter of Intent explicitly disclaimed that it was creating any legal obligation whatsoever, it could not have constituted a "bona fide offer" under Article 15. As a result, it could not have triggered Foxboro's right of first refusal. Accordingly, Foxboro is likely to prevail at trial in establishing that the Letter of Intent did not constitute a bona fide offer under Article 15 of the Agreement, and that, therefore, Soft Systems would violate the Agreement if it were to consummate the transaction with Wonderware without first tendering to Foxboro a valid third party bona fide offer.

### b. *Irreparable Harm.*

■ If Soft Systems were to go through with the sale with Wonderware, Foxboro will be forever deprived of its right of first refusal under the Agreement. The sale will be consummated, Soft Systems will be acquired by Wonderware, and Foxboro will be left out in the cold. Furthermore, Foxboro has incorporated DIREKTOR software into its own Intelligent Automation Series, a development which is important to Foxboro's position in the market place in this area. If Soft Systems were to close the deal with Wonderware, Foxboro would be required to sell its ownership interest in DIREKTOR and thus lose an interest in a valuable piece of intellectual property.

In the court's view, the sale of Soft Systems in violation of the Agreement would cause Foxboro irreparable harm.

### c. *Balance of Harms.*

■ The balance of harms tilts in favor of Foxboro.

Foxboro has conceded that the Agreement and Plan of Reorganization, attached to the Affidavit of Otto Voit, constitutes a valid bona fide offer under Article 15 of the Agreement. Foxboro took the position at the hearing on this motion that Foxboro could be deemed to have received the offer under Article 15 as of 12:00 noon, August 7, 1995, thus triggering the right of first refusal, and giving Foxboro fourteen days to respond to the offer.

Viewed in light of these developments, the real harm to Soft Systems is the additional fourteen day delay during which Foxboro will have time to decide whether it will exercise its right of first refusal. Soft Systems claims that in the volatile software industry, employees may decide to leave the company when the future of the company is uncertain. It also states that Soft Systems has put all capital expenditures on hold pending the acquisition. Soft Systems, however, has been able to wait over six weeks since the receipt of the Letter of Intent. It has failed to document how this delay has caused it any actual harm, and it is rather speculative to claim that an additional delay of two weeks will cause the woes prophesied by Soft Systems.

Comparing the complete extinguishment of Foxboro's right of first refusal and the potential loss of DIREKTOR on the one hand, with the speculative dangers cited by Soft Systems over the next two weeks, the court finds that the balance favors the issuance of the preliminary injunction.

### d. *Public interest.*

It is in the public interest that parties honor the agreements to which they have bound themselves, so granting the injunction sought is in the public interest.

3. *Order.*

For the reasons stated above, it is ORDERED that, pending further order of the court:

1. Soft Systems be, and it hereby is, enjoined from consummating a transaction with Wonderware that involves the acquisition by Wonderware of a controlling interest in Soft Systems or the assets of Soft Systems without first presenting Foxboro with Wonderware's binding and bona fide offer and then permitting Foxboro fourteen days to exercise its right of first refusal pursuant to Article 15 of the Agreement.

2. Soft Systems be, and it hereby is, further enjoined from consummating said transaction on the basis of its treatment of the June 28, 1995, Wonderware Letter of Intent as a bona fide offer under Article 15 of the Agreement.

3. Foxboro give security in connection with the injunctions hereby ordered by posting a bond in the amount of $5 million; and said injunctions shall not become effective until such bond has been posted.

So Ordered.